This is a suit by plaintiff for damages for personal injuries received by him in a collision between the bobtail truck he was driving and a truck owned and operated by defendant, Gulf Refining Company, and at the time being operated by its employee, Will Rolls. The defendant truck carried a trailer and was loaded with 8,000 pounds of drill pipe. Plaintiff's truck was heavily loaded with cans of syrup. Both the Gulf Refining Company and Will Rolls are impleaded as defendants.
The place of the collision was on Highway No. 80, a 20-foot concrete highway with shoulders three feet wide on each side and leading from Minden to Shreveport, Louisiana, and at a point approximately one mile west of the corporate limits of the City of Minden in a curve in the road approximately 200 feet from the east end of a long curve to the southwest. The time of the accident was about three-thirty in the afternoon of March 4, 1940. The highway was dry and the weather *Page 332 
clear. Plaintiff was traveling west and defendant's truck was going east.
Plaintiff alleged that he was traveling about 25 feet behind a car driven by Coy Ethridge going in the same direction and at a speed of approximately 30 miles per hour; that defendant's truck driver was driving the truck at a fast and excessive rate of speed and just ahead of defendant's truck, traveling in the same direction, was a mule-drawn wagon going very slowly; that just before the car driven by Coy Ethridge reached the mule-drawn wagon, Will Rolls drove his truck into the north lane of traffic, his left side of the road, in order to pass the wagon; and that Coy Ethridge, in order to avoid a collision with the truck pulled his car to the extreme north side of the highway and shoulder and stopped or nearly stopped his car.
Plaintiff further alleged that he realized it was impossible for Will Rolls, due to the shortness of distance and the length of defendant's truck and trailer, to drive the truck back to the south side of the highway before colliding with his truck and that if he, plaintiff, had attempted to drive to the extreme north side of the highway and shoulder, he would have been struck by defendant's truck and knocked down a rather steep embankment on that side of the highway; and being confronted with that emergency created by Will Rolls' negligence, he cut his truck sharply to the left across the highway toward the left shoulder where there was only a slight incline instead of a ditch. That at the very moment he cut or suddenly turned his truck across the highway, Will Rolls, realizing the danger caused by his actions, also suddenly turned the truck toward the same side of the highway as plaintiff did. The two trucks collided on the south side of the highway and shoulder.
Plaintiff alleged many acts of negligence on the part of the truck driver, Will Rolls. In many instances they are overlapping and can be boiled down and minimized as follows:
Excessive speed, due to the heavy load on defendant's truck and the condition of traffic on the highway at the time; failing to keep a proper lookout; attempting to pass the wagon when the north lane of traffic on the highway was not clear for a sufficient distance east for him to pass in safety to himself and others.
Plaintiff prayed for judgment in the sum of $10,124.
Defendants denied that Will Rolls was negligent in any manner and alleged the accident was caused solely by plaintiff's negligence; that Will Rolls was driving the truck at a careful and cautious rate of speed; that when he overtook the mule-drawn wagon he looked and saw sufficient clearance on the highway to pass the wagon; that he did pass it and had regained his right side of the highway before he passed the car driven by Coy Ethridge. That plaintiff was traveling approximately 25 feet behind the car driven by Ethridge and without notice or warning suddenly, in an attempt to pass the Ethridge car, cut out from behind it and across the highway to the south side or lane of traffic directly in front of defendant's truck; and that Will Rolls, realizing that a collision was inevitable, turned his truck off the pavement to the south shoulder of the highway and there the collision occurred.
The negligent acts charged to plaintiff by defendants are:
Excessive speed; following the Ethridge car too closely; failing to keep a proper lookout; suddenly attempting to pass the Ethridge car without making sure the way was clear; and failing to maintain proper control of his truck.
In the alternative, defendants pleaded contributory negligence on the part of plaintiff as a bar to his recovery.
Defendant, Gulf Refining Company, reconvened for damages caused its truck in the sum of $297.88.
The lower court rendered judgment rejecting the demands of plaintiff and awarding Gulf Refining Company judgment in reconvention in the amount sued for. Plaintiff is prosecuting this appeal.
The law applicable to this case is Act 286 of 1938, Sec. 3, Rule 7, and set out in Dart's Louisiana General Statutes, Sec. 5212 (c) and (d), which provides as follows:
"(c) The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima *Page 333 
facie upon the driver of the vehicle doing the overtaking or passing.
"(d) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction, approaching the crest of a hill or substantial grade, or upon a curve in the highway or elsewhere, where the view of the driver doing the overtaking or passing is obstructed within a distance of five hundred (500) feet."
And Sec. 3, Rule 8, of the same Act, which is Sec. 5213 of Dart's Louisiana General Statutes, which provides:
"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway.
"(b) The driver of any motor truck, when traveling upon a highway outside of a business or residential district, shall not follow another motor truck within one hundred (100) feet, but this shall not be construed to prevent one motor truck overtaking and passing another."
To find that Will Rolls violated (c) and (d) of Sec. 3, rule 7, as quoted above, is inescapable. He was driving a truck of the Gulf Refining Company east and preceding him on the highway was a mule-drawn wagon. He overtook the wagon in a curve in said highway and passed it. At the time Rolls started to pass the wagon, his left side of the highway was not clear. To the contrary, the car driven by Coy Ethridge and the truck by plaintiff were both within a short distance of the mules pulling the wagon. The Ethridge car, according to his testimony, which is corroborated and he was a defense witness, was nearly even with the heads of the mules pulling the wagon. He and plaintiff were both traveling west. Determined by Will Rolls' actions that he was going to attempt to pass the wagon, Ethridge immediately pulled his passenger car off on the shoulder as far as possible and came to a stop about even with the mules and Will Rolls drove his truck through the lane left open between the Ethridge car and the wagon. The truck carried a trailer and was loaded with pipe 30 feet long, therefore, the overall length could not have been less than 40 feet. It was necessary and required by law (Sec. 3, Rule 7 (a), Act 286 of 1938) that the truck travel far enough on the left side of the road for the entire truck to be clear of the wagon and mules before the truck could return to its right side of the road.
Plaintiff alleged in his petition that he was traveling 25 feet behind the Ethridge car and this was admitted by defendant in answer. However, on trial of the case, it was proved that plaintiff was never in sight of the Ethridge car until plaintiff was approximately 200 feet from the place of the accident. He had not been trailing the Ethridge car. Ethridge had slowed down a short distance east of the scene of the accident to look at a wholesale Butane gas plant and thereafter continued slowly until he stopped to let Will Rolls and his truck through and at the time Ethridge stopped, plaintiff's truck was from 50 to 75 feet to its rear. It was too close for Will Rolls to have time to clear the wagon and return to his right side of the road. The evidence is clear that plaintiff was not speeding.
Will Rolls violated the law above quoted in almost every conceivable manner, in passing the wagon when and where he did and the responsibility for the accident rests prima facie upon him. It is difficult to imagine a more reckless disregard of the law and the rights of other users of the highway than was displayed by Will Rolls on this occasion and, unless plaintiff was guilty of negligence which was a proximate cause of the accident, Will Rolls and his employer, the Gulf Refining Company, are liable for the damages caused to him.
When plaintiff saw defendant's truck pull out to pass the wagon he realized there was not sufficient time and space for the truck to return to its right side of the road before colliding with his truck and thought the best way to minimize the damage, which to his mind was inevitable, was to attempt to take the ditch on the left side of the road, which was not as deep as the one on his right side of the road. He therefore suddenly turned his truck to the left and headed for the left ditch. Will Rolls, realizing then the danger confronting him, suddenly turned his truck toward the same ditch, the front ends of the two trucks, the right front of plaintiff and the left front of defendant, collided with much force after the front ends of both had cleared the pavement.
Although defendants alleged that plaintiff attempted to pass the Ethridge car, the evidence is barren of anything to suggest such an intention on the part of plaintiff and, in this court, defendants contend that plaintiff turned across the road because he could not stop his car as Ethridge did, due to defective brakes. There is no allegation *Page 334 
of defective brakes or of plaintiff's truck being overloaded, however, on the trial some evidence was heard without objection to indicate both. The testimony as to the brakes being defective was given by a mechanic who examined the car after the accident and after the front end of it had been almost completely demolished. Regardless, however, of the brakes having been defective or the truck being overloaded, and assuming they were, we fail to see what part that played in the accident. It was not a proximate cause. Plaintiff did not try to stop his truck for the reason he believed he would be run into by the truck if he stopped on his right side of the road and he tried to get away from that side.
Whether plaintiff's judgment was sound or not is immaterial. He was faced with an emergency caused by the unlawful acts of Will Rolls and acted on the spur of the moment and as he thought best. That is all the law required of him. We are not so sure his judgment was sound. Simply because Rolls' truck passed without striking the Ethridge car, which had taken to the shoulder, is not proof that the truck would not have struck plaintiff's truck.
Ethridge was in a regular passenger car which was not as wide as plaintiff's truck and not nearly as heavy. He could have pulled his car nearer the outer edge of the three-foot shoulder without danger of caving off than the plaintiff would have dared to go with his loaded truck. The body of plaintiff's truck was seven and one-half feet in width and necessarily occupied more road space than the passenger car. Plaintiff was not speeding and when he saw the Ethridge car slowing down, he reduced the speed of his truck. He did not attempt to use his brakes to stop the truck but apparently accelerated his speed in attempting to make it to the left ditch before being run into. What effect if any the heavy load on the plaintiff's truck had on the accident we fail to discover. We fail to find any negligence on the part of plaintiff which was a proximate cause of the accident.
In this court defendants urge the doctrine of last clear chance and contend that plaintiff had that chance of avoiding the accident in that he should have seen that Will Rolls was passing the wagon and stopped his truck immediately. There is no merit in this contention. Plaintiff saw Will Rolls as soon as he started around the wagon and realized that if he did not get away from the right side of the road he would be run into. When we consider that not more than 100 to 150 feet separated the Rolls' truck from plaintiff's truck at the time and Rolls was traveling at 25 miles per hour, with plaintiff at a like speed, we are bound to realize that distance was being fastly reduced and the time for any action by either was very short, in fact, too short to avoid the inevitable collision.
We are convinced that the accident was caused solely by the negligence of Will Rolls in attempting to and in passing the wagon when the left side of the road was not clear for a sufficient distance for him to pass in safety to himself and others using the highway. Defendants are therefore liable to plaintiff for all damages caused to him by the accident.
Plaintiff itemizes his damages as follows:
Injury to the left knee .............................. $ 1000.00 Fracture of fourth lumbar vertebra ................... 3000.00 Permanent potential weakness of back ................. 3000.00 Shock, pain, inconvenience and mental suffering ...... 3000.00 Doctors' bills ....................................... 69.00 X-ray bills .......................................... 22.50 Hospital bill ........................................ 32.50 --------- Total ........................................ $10,124.00
Plaintiff received a severe injury to his left knee. Fortunately no bones were broken and it has completely healed. It caused him severe pain for many weeks. He also received a fracture of the fourth lumbar vertebra. The line of fracture begins upon the superior border of the left pedicle or arch of the fourth lumbar vertebra and extends downward and upward into the base of the right superior articular process and the base of the right transverse process. Some of the physicians thought this injury would heal and not disable plaintiff for more than six months. Others guessed one year and some thought it would be permanent. At the time of trial, ten months after the accident occurred, the fracture had practically healed, however, plaintiff had a tenderness in that region of the back and still complained of some pain.
Plaintiff was confined to the hospital from March 9th to the 15th and remained at home in bed for several days, when he returned to the hospital on March 18th where he remained one day and night while *Page 335 
a plaster cast was placed on him. He then returned home and remained for six weeks until the cast was removed. The doctors all testified that his suffering was severe and required the administering of hypodermics and sedatives to relieve his extreme pain. Plaintiff also suffered from many brush burns and abrasions.
We have concluded that plaintiff's injuries will not permanently disable him. While there is always a chance of a back injury giving future trouble, no permanent troublesome condition had arisen at the time of trial and the healing process of the fracture was satisfactory.
Plaintiff has failed to sue for the loss of any earnings on account of said injuries. He filed his suit in forma pauperis, therefore, we are sure he was without financial means and no man can live on air alone. He necessarily must have done some work to earn a living. The fact is, however, he did not sue for loss of earnings and did not attempt to prove any loss in that respect. Since we have concluded his injuries are not permanent there is no item for recovery to be allowed except pain, suffering and expenses incurred in treating his injuries. There is no dispute over the amount due for x-rays, hospital and doctors' bills, totalling $124. Plaintiff is entitled to judgment for that amount and $2,000 additional for pain and suffering.
It therefore follows that the judgment of the lower court is reversed and there is now judgment for plaintiff against defendants, in solido, in the full sum of $2,124, with legal interest thereon from judicial demand until paid. The demands of defendant, Gulf Refining Company, in reconvention for damages caused to its truck are rejected; all costs to be paid by defendants.